Bergan, J. (dissenting).
The petitioners, who have a retail liquor store in the Brooklyn neighborhood for which the State Liquor Authority has granted a new retail license, are opposed to the resulting increased competition. This is readily to be understood.
But the standard by which it is to be decided whether an additional license shall be issued is the “public convenience and advantage ” to be served (Alcoholic Beverage Control Law, §§ 2, 63, subd. 6). It is not tested by the viewpoint toward new competition of the holder of an existing license in a business in which restriction of enterprise has heretofore fostered monopolistic practice under the shelter of public law and administrative policy.
It is not the convenience and advantage of the holders of existing licenses that are to be served, but public convenience and advantage. These are quite different things. And the responsibility for deciding this in any given case or any *231 particular locality is not for Judges but for the Liquor Authority.
The words of the statutory test ‘ ‘ public convenience and advantage ’ ’ have been the same from the beginning of the Alcoholic Beverage Control Law (L. 1934, ch. 478). The public policy of the State relating to alcoholic beverages is best to be carried out, says the statute, by empowering the Liquor Authority “to determine whether public convenience and advantage will be promoted” by the issuance of licenses and by “ the increase or decrease in the number thereof ” and their “location ” (§ 2).
The 1965 amendment to section 63, adding new subdivision 6, (L. 1965, ch. 1024) is, of course, a literal restatement of words that have been in the statute for over 30 years and provides, merely, that determinations as to the issuance of a new license or transfer of an existing license shall be made in accordance with public convenience and advantage.
What is public “ convenience ” in buying liquor at retail can be a matter of reasonable difference of opinion. One factor normally to be considered would be the number of retail outlets as measured against the background of traffic movement in the area, population density and general retail business activity. It is a common experience in free enterprise that competition normally increases to the point where new ventures are no longer profitable and then new businesses stop coming in, and that as competition grows price levels have a tendency to stay down. To the man who would buy liquor at retail, price, as well as geography, is part of “ convenience ”,
But public “advantage” is a broader concept and it is related to general State policies in the sale and distribution of liquor. The public malfunctions in the regulation of liquor which led the Governor in 1963 to appoint a Moreland Commission to make a study and reappraisal of the State’s liquor laws were tied closely into the tight administrative restrictions on the number of retail licenses, and hence the spectacular increase in the money value of a license, as well as to the State-enforced minimum prices for brand liquors which cost New York consumers $150 million a year over the amount at which it would have been available in a free market (Governor’s Message, Feb. 10, 1964; Moreland Comm. Report No. 3, pp. 5, 6; cf. Seagram *232 & Sons v. Hostetter, 16 N Y 2d 47, 54-55). The tight restriction on the number of retail licenses became a fertile ground for corruption.
When, therefore, the Moreland Commission recommended (Report No. 1, p. 44) the elimination of the statutory 1,500-foot distance requirement in large cities and the 700-foot requirement elsewhere between retail stores provided by subdivision 4 of section 105 as having “ no present purpose except to restrict competition ’’ (Report No. 1, p. 15), the New York concept of public “ advantage ” in the competitive aspect of retail licenses must be deemed to have been changed upon the repeal of the distance requirement by chapter 531 of the Laws of 1964.
This court expressly noted in 1965 that the statutory change of 1964 was aimed in the direction of a more open market and an increase in competition in the retail sale of liquor in the interest of the consumer (Matter of Hub Wine & Liq. Co. v. State Liq. Auth., 16 N Y 2d 112, 117).
Moreover, the Governor’s Message of February 10, 1964, which led ultimately to the enactment of the revised statute, treated as one of the “ artificial devices ” working against “ justice to the consumer ”, and hence presumably against public advantage, the ' ‘ arbitrary and compulsory distances between package stores ”.
If, as it has become apparent, the Liquor Authority is attempting to respond to this manifest change in public policy to reduce a monopolistic evil by more freely granting licenses to retail liquor dealers and, of course, increasing competition among them, the court ought not readily interpose its own special and different concept of what degree of competition in a given neighborhood is for the public advantage. It is obvious on the face of the statute that this is not the court’s proper function.
The case before us illustrates rather well a typical administrative law value situation in which the agency rather than the court ought to make the decision. The Chairman of the Board in an affidavit presented to the court at Special Term swore that the Authority made a finding of ‘ ‘ public convenience and advantage ” in granting the additional license after “ a thorough survey of the area and of the business done by nearby stores, on the part of both the local Alcoholic Beverage Control Board and the Authority ”.
*233 A number of details of the factual basis of the conclusion are disclosed. Among these factors are the physical and business features of the area and increases in business done by the four existing stores in the neighborhood, one of which is 75 feet away from the proposed licensee and on a different street and others at distances in excess of 500 feet.
This court is remitting the application to the Authority for reconsideration. It is not saying flatly that five liquor licenses are too much to serve this Brooklyn area as a matter of “ public advantage ” and, therefore, no additional license should issue; nor is it holding that the increases in business of the four present licenses have not shown dollar or percentage amounts great enough to open the door of competition, and hence as a matter of law the door should be closed.
What it seems to be holding is that the Authority has not spelled out the reasons for its decision sufficiently to satisfy the court. But a careful perusal of the papers shows that the Authority has spelled out its reasons and that they are consistent with the report of the Moreland Commission, with the message of the Governor and with the purposes of the 1964 statute, i.e., that additional competition is in the public advantage. Indeed, this is expressly stated in the Chairman’s affidavit.
A word ought to be said about the procedure. This case illustrates the unsuitability of section 123 of the Alcoholic Beverage Control Law as a vehicle of reviewing a determination of the Liquor Authority reached upon a full consideration of a licensing problem and within the frame of its jurisdiction.
Although the court unanimously affirmed the order in Matter of McNulty v. State Liq. Auth. (17 N Y 2d 434) in a proceeding under section 123, there were among some Judges of the court reservations as to the general procedural suitability of the section for any such purpose as it has been put in the case now before us. McNulty was, indeed, decided on very narrow procedural grounds and essentially all it determined was that the petition was sufficient on its face to require the Authority to file an answer.
But the procedure expressly authorized by this section is lo restrain by injunction at the suit of a taxpayer or the Liquor Authority the “ unlawful ” sale of liquor. The statute, in terms, *234 authorizes the proceeding for an injunction to be maintained against a person selling liquor “without obtaining the appropriate license therefor ’ i.e., where the Authority has not issued a license. The phrase in context “ or otherwise unlawfully ” means the traffic is without a license or otherwise (and similarly) in violation of law.
Before the decision in McNulty two cases had reached this court where the injunctive process was approved after licenses had been granted by the Authority (Matter of Frank v. Hub Liqs., 268 N. Y. 688; Matter of O'Brien v. Rozza, 271 N. Y. 545), but in each there was shown a violation of the express statutory distance requirements, and, of course, in such cases it could be seen by objective observation that the very terms of the statute had been violated by the license.
But the statute must be stretched out beyond all sensible recognition to become a vehicle by which a liquor licensee can sue the Liquor Authority which has given him his license for an injunction to restrain the issuance of another license on the ground it is “unlawful” for the new licensee to sell liquor under the license — all because the present store owner believes there will be too much competition.
The order should be affirmed.
Judges Fuld, Burke and Keating concur with Chief Judge Desmond ; Judge BergAn dissents in an opinion in which Judges Van Voorhis and Scileppi concur.
Order reversed, etc.